UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEBORAH WESTMORELAND,<br><br>     Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK NORTHWEST, N.A.,<br><br>     Defendant. | Case No. 1:15-cv-00312-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**MOTION FOR RELIEF FROM PROTECTIVE ORDER (DKT. 21); and**<br><br>**MOTION TO COMPEL (DKT. 26)** |

## INTRODUCTION

Pending before the Court are two motions. First, Plaintiff Deborah Westmoreland filed a Motion for Relief from Protective Order, seeking an order directing Defendant Wells Fargo Bank to re-designate certain personnel documents designated "Attorney's Eyes Only" to "Confidential."(Dkt. 21.) Second, Wells Fargo Bank filed a Motion to Compel Westmoreland to produce social media postings, communications from a joint e-mail account Westmoreland shares with her husband, and a company issued laptop in Westmoreland's possession. (Dkt. 26.)

The Court heard oral argument from the parties on October 18, 2016. After review of the record, consideration of the parties' arguments and relevant legal authorities, and

**MEMORANDUM DECISION AND ORDER - 1**

otherwise being fully advised, the Court issues the following memorandum decision and order granting Westmoreland's motion, and granting in part and denying in part Wells Fargo Bank's motion.

## FACTUAL/PROCEDURAL BACKGROUND

On August 10, 2015, Deborah Westmoreland filed a Complaint against Wells Fargo Bank asserting claims for sex discrimination, age discrimination, and retaliation in violation of state and federal law. (Dkt. 1.) Westmoreland alleges her direct supervisor, Don Melendez, discriminatorily harassed and retaliated against her, resulting in her receiving multiple "corrective actions," and forcing her to take a constructive demotion outside Idaho to salvage her career. Wells Fargo Bank denies the allegations and contends Westmoreland chose to leave her position in Idaho, and that her various corrective actions were non-discriminatory, non-retaliatory, and justified due to her lack of leadership and inadequate job performance.

## MOTION FOR RELIEF FROM PROTECTIVE ORDER

Wells Fargo Bank produced numerous personnel documents in this action, at least 222 of which were designated by Wells Fargo Bank as "Confidential/Attorney's Eye's Only" (AEO), pursuant to a stipulated protective order. (Dkt. 15.) Westmoreland objects to this designation on the 222 personnel documents, and seeks an order directing Wells Fargo Bank to re-designate the AEO documents to "Confidential," because the AEO designation hinders Westmoreland's counsel's ability and obligation to adequately and fully advise his client, and to prepare for depositions and other litigation activities. Specifically, Westmoreland's counsel contends re-designation is essential because he

**MEMORANDUM DECISION AND ORDER - 2**

needs the assistance of and insight from Westmoreland to: (1) fully understand the documents' information in the context of the culture and practices of Wells Fargo Bank; (2) properly assess damages; and (3) determine what information can be used as potential evidence at trial, or whether there is a need for further discovery.

Wells Fargo Bank is willing to consider re-designating some of the personnel documents marked as AEO, but only if Westmoreland's counsel first identifies the specific documents or portions of the documents he seeks re-designation, and explains why he needs to reveal the personnel documents to Westmoreland. In support of the AEO designation, Wells Fargo Bank asserts Westmoreland's review of the documents at issue would be unduly invasive, harassing, and unnecessary because Westmoreland is still a Wells Fargo Bank employee. The Bank contends also that Plaintiff's counsel did not meet and confer with Wells Fargo Bank before filing the current motion. However, Wells Fargo Bank did agree to re-designate some, but not all of the documents marked AEO, after e-mail communications were exchanged among counsel.

The Court finds Plaintiff's counsel fully satisfied the threshold requirement to meet and confer when he e-mailed Wells Fargo's counsel, requesting they re-designate the documents. (Dkt. 22-1 at 2.) Counsel for the Bank indicated she was expecting further discussion with opposing counsel regarding which documents were still at issue and the reason Westmoreland needed to review them before the motion was filed. However, the Court finds further discussion demanded by Wells Fargo Bank, in this context, would likely require Westmoreland's counsel to reveal attorney work product, which is of course, not the purpose of the meet and confer. In addition, the Court finds nothing

**MEMORANDUM DECISION AND ORDER - 3**

precluded counsel for Wells Fargo from extending this offer during the nearly three months between the time the motion was filed and before the hearing conducted on the same by the Court.

Turning to the substance of the motion, the Court finds also that Wells Fargo Bank failed to meet its burden for the AEO designation on the personnel documents produced. The disclosure of confidential information on an "attorneys' eyes only" basis is typically "'a routine feature of civil litigation involving trade secrets.'" *MWI Veterinary Supply Co. v. Wotton*, 2012 WL 2872770, at *1 (D. Idaho July 12, 2012) (quoting *In re The City of New York,* 607 F.3d 923, 936 (2nd Cir.2010)); *see also Gillespie v. Charter Commc'ns*, 133 F. Supp. 3d 1195, 1202 (E.D. Mo. 2015) ("Generally, an 'attorneys' eyes only' designation is an appropriate only in cases involving trade secrets."). To protect the confidentiality of such disclosure, the Court has authority pursuant to Fed. R. Civ. P. 26(c) to issue an order that limits its disclosure. Fed. R. Civ. P. 26(c)(1)(G)("The court may, for good cause, issue an order to protect a party or a person requiring that a trade secret or other confidential research, development, or commercial information not be revealed only in a specified way.").

The Court has "broad discretion…to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). However, the Court must be careful in issuing orders which allow for AEO designations, "because at least until trial, the opposing party itself cannot see the most crucial evidence in the case." *MWI Veterinary Supply Co.*, *2012* WL 2872770, at *2 (internal quotations omitted). Thus, in its determination as to whether an AEO

**MEMORANDUM DECISION AND ORDER - 4**

designation is appropriate, "there must be solid grounds for keeping such material from a party, and there must be protections to allow that party to fully prepare for trial despite being unable to see the material." *Id.*

"While courts generally make a finding of good cause before issuing a protective order, a court need not do so where…the parties stipulate to such an order." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). In situations like here, where the parties stipulated to a protective order without making a good cause showing, "the burden of proof…remain[s] with the party seeking protection." *Id.*(quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 n. 1 (9th Cir. 2002). "If a party takes steps to release documents subject to a stipulated order, the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material." *Id.*

Here, Wells Fargo Bank is mistaken as to who bears the burden of establishing good cause to maintain the AEO designation to the personnel documents at issue—Wells Fargo Bank carries the burden, not Westmoreland. The Bank has not shown an AEO designation is necessary to protect the confidentiality of the personnel documents at issue, given production as "Confidential" would ensure the necessary protection—Westmoreland cannot publish or otherwise use the personnel documents outside the scope of this litigation. Wells Fargo Bank fails to demonstrate why a "Confidential" designation would be insufficient to protect the personnel documents, other than by alleging that Westmoreland's review of these documents would be unduly invasive, harassing, and unnecessary because she is still employed by Wells Fargo Bank. This

**MEMORANDUM DECISION AND ORDER - 5**

argument is neither persuasive nor sufficient to establish good cause to maintain the AEO designation. Therefore, the Court will order Wells Fargo Bank to re-designate the personnel documents at issue as "Confidential."[1]

## MOTION TO COMPEL

Wells Fargo Bank seeks an order compelling: (1) an additional-third review of Westmoreland's Facebook account by a paralegal; (2) production of any and all e-mails sent by Westmoreland's counsel to an e-mail account shared by Westmoreland and her husband during the period of legal representation to the present; and (3) the return of the company issued laptop in Westmoreland's possession to obtain the contents of the laptop. For the following reasons, the Court will deny the motion to compel the Facebook and e-mails, and will grant, in part, Wells Fargo Bank's request as it relates to the laptop computer.

## I. Discovery Standard

Federal Rule of Civil Procedure 26(b)(1), as amended December 1, 2015, allows parties to obtain discovery:

> Regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery resolving the issues, and whether the burden or expense of the propounded discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[1] Inherent in this order is the expectation that Westmoreland and her counsel will fully abide by the terms of the protective order as it relates to the "Confidentiality" designation.

**MEMORANDUM DECISION AND ORDER - 6**

Further, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

If the answering party fails to adequately respond to discovery requests or fails to make a disclosure required by Fed. R. Civ. P. 26(a), the propounding party can move for an order compelling discovery under Fed. R. Civ. P. 37(a). Generally, a court should deny a motion to compel only if the information requested falls outside the scope of discovery (or if it is disproportionate, etc.). *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992); *cert. denied*, 508 U.S. 908 (1993). In other words, a motion to compel "should be granted if questions are relevant and proper…." Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2286 (1994).

II. Discussion

    A. Additional Facebook account review

Wells Fargo Bank seeks an order compelling a paralegal within the law office of Plaintiff's counsel to conduct a third search of Westmoreland's Facebook account.[2] Wells Fargo Bank insists social media postings and messages fall within its Request for Production Nos. 11-14 and its deposition notice of Westmoreland. The Bank requests

---

[2] Specifically, Wells Fargo Bank requests a paralegal to search for social media information between Westmoreland and any Wells Fargo employee, former employee, or third party related to this litigation, including, but not limited to communications concerning Westmoreland's job performance and her statements concerning her supervisor, Melendez. Wells Fargo Bank seeks also social media information that relates to Westmoreland's alleged emotional distress or lack thereof, and other factors affecting Westmoreland's wellbeing.

**MEMORANDUM DECISION AND ORDER - 7**

also that Westmoreland's deposition be re-opened to allow inquiry into issues of potential spoliation and the substance of the disclosed social media messages. For the reasons that follow, the Court will deny Wells Fargo Bank's requests.

The requests for production at issue here include the following:

**Request No. 11:** All documents relating to any communication you had with any of Defendants current or former employees, agents or legal counsel at any time during the term of your employment with Defendants concerning any of the matters alleged in your Complaint, including, but not limited to, handwritten notes, emails, text messages, instant or chat messages, and telephone or cellular phone bills evidencing such communications.

**Request No. 12:** All documents relating to any communication between you and any third-party (other than your attorney) relating to your employment with Defendant, change of position, or any of the allegations in your Complaint, including, but not limited to, handwritten notes, emails, text messages, instant or chat messages, and telephone or cellular phone bills evidencing such communications.

**Request No. 13:** All written statements, recorded or transcribed statements, affidavits, or declarations obtained by you or your representatives, agents or attorneys from any individual related to the allegations in your Complaint.

**Request No. 14:** All documents provided to you by a third party related to this lawsuit including pursuant to a subpoena duces tecum or otherwise.

Although these requests are overbroad regarding the scope of time and in other regards, and social media is not specifically included in them, Facebook messages reasonably fall within these communication requests and are addressed by the duces tecum. The Court finds, however, Westmoreland's production to date of her Facebook messages is satisfactory. Although the Facebook messages were not initially disclosed,[3]

---

[3] Counsel apparently failed to discuss and agree early on in the litigation how e-discovery and social media would be reviewed and produced.

**MEMORANDUM DECISION AND ORDER - 8**

once counsel realized their existence vis-a-vis Ms. Razzeto's deposition testimony, the messages were produced.

With regard to Westmoreland's Facebook postings and photographs, the Court is not convinced a third review of the account is proportional to the needs of this litigation. S*ee E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434 (S.D. Ind. 2010) ("Although ... the contours of social communications relevant to a claimant's mental and emotional health are difficult to define, that does not mean that everything must be disclosed.") *see also Ye v. Cliff Veissman, Inc.*, No. 14-CV-01531, 2016 WL 950948, at *3 (N.D. Ill. 2016) ("Although almost everything that is posted on social media can reflect a person's emotional state of mind, that does not mean that Defendants can inquire into every conversation and interaction the decedent and her next of kin ever had with anyone in the world.").

Both Westmoreland and her counsel have testified (through declaration) they each spent several hours reviewing Westmoreland's Facebook account for any information "remotely relevant" to Wells Fargo Bank's requests. And, at the conclusion of their searches, counsel produced approximately eight pages of postings after the Razzeto messages were produced, to Wells Fargo Bank. No explanation is offered by the Bank to support a contention that an additional third search would result in the identification or production of additional responsive information. Seeing no basis for the time or costs of a third search of Westmoreland's Facebook account, the Court will deny Wells Fargo Bank's request.

**MEMORANDUM DECISION AND ORDER - 9**

### B. E-mails from shared spousal account

Wells Fargo Bank seeks to compel the production of all e-mail communications sent by Westmoreland's counsel to an e-mail account ("Saxman") shared by Deborah and David Westmoreland[4]—the majority of messages of which were intended for only Mrs. Westmoreland. Wells Fargo Bank contends it is entitled to these e-mails because no attorney-client relationship exists between Mr. Westmoreland and Plaintiff's counsel, and thus, communications sent by his wife's counsel are not protected. In addition, Wells Fargo Bank asserts the e-mail communications are not protected by a marital privilege. For the following reasons, the Court will deny Wells Fargo Bank's request.

Federal law governs attorney client privilege in nondiversity actions.[5] Fed.R.Evid. 501. The purpose of the attorney-client privilege is to encourage candid communications between client and counsel. *See Upjohn Company v. United States,* 449 U.S. 383, 390–91, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The attorney-client privilege attaches to "(1) communications (2) made in confidence (3) by the client (4) in the course of seeking legal advice (5) from a lawyer in his capacity as such, and applies only (6) when invoked by the client and (7) not waived." *United States v. Abrahams,* 905 F.2d 1276, 1283 (9th Cir.1990), overruled in part on other grounds by *United States v. Jose,* 131 F.3d 1325, 1329 (9th Cir.1997).

---

[4] In this section, the Court refers to the Plaintiff as "Mrs. Westmoreland" and her husband as "Mr. Westmoreland."

[5] The Court mistakenly indicated during the hearing that the Idaho, rather than Federal, rules of evidence governed the application of the marital privilege in the context of the issues before it. The Court clarifies that the Federal Rules of Evidence apply and Defendants citation to the criminal case (and cited in footnote 7) was not inappropriate.

**MEMORANDUM DECISION AND ORDER - 10**

The e-mail communications sent by Westmoreland's counsel to the shared Saxman account were intended, unless otherwise indicated, for his client, Mrs. Westmoreland.[6] While there may have been morsels of privileged attorney-client communications in these e-mails, Westmoreland's counsel contends the substance of the e-mails pertain to, for the most part: scheduling arrangements, copies of correspondence to or from opposing counsel, or discussion of information that ultimately was disclosed in discovery. However, Westmoreland seeks to maintain the privileged nature of these communications and contests the argument that the privilege was waived by her counsel sending communications to the shared e-mail account.

The Court finds the Bank has not sufficiently demonstrated that Mrs. Westmoreland waived any privilege to her communications with her counsel by asking her counsel to send communications to the shared Saxman e-mail address. The Saxman e-mail account is a private account, in which only Mr. and Mrs. Westmoreland have access. Accordingly, Mrs. Westmoreland and her husband have some expectation of privacy in messages that are sent to and from that account. *But cf. Alamar Ranch, LLC v. Cty. of Boise*, 2009 WL 3669741, at *4 (D. Idaho Nov. 2, 2009) (client waived attorney-client privilege for e-mails sent to her attorney using her work computer and work e-mail address, when put on notice her employers could access her accounts at any time); *see also Thygeson v. Bancorp,* 2004 WL 2066746 at *21 (D.Or. Sept.15, 2004) (finding employee had no reasonable expectation of privacy in files he stored in his personal

---

[6] Wells Fargo Bank suggests that no attorney-client relationship exists between Mr. Westmoreland and his wife's counsel. The Court, however, does not need to reach a conclusion on this issue to reach a determination on the motion to compel.

**MEMORANDUM DECISION AND ORDER - 11**

folder on his computer because office had monitoring policy.). Although the account is shared, there no evidence to support that Mr. Westmoreland reviewed or read any e-mails or opened any attachments that were intended for Mrs. Westmoreland. Rather, to the contrary, Mr. Westmoreland testified in his sworn affidavit that it is his practice to inform his wife when he sees an e-mail in the Saxman inbox that is from his wife's counsel and addressed to her, and to not otherwise read the contents.

In addition, even if Mr. Westmoreland read the e-mails, the Court is reluctant to conclude that Mr. Westmoreland qualifies as a third-party for the purposes of waiver of the privilege to attorney-client communications.  All communications between Mr. and Mrs. Westmoreland are presumed to be confidential and protected by the martial communications privilege.[7] If counsel communicated privileged information to Mrs. Westmoreland over the telephone or in person, Mrs. Westmoreland could theoretically share that information with her husband, and those communications would be protected by the marital communications privilege. *Pereira v. United States*, 347 U.S. 1, 6 (1954) (martial communications are presumed to be confidential unless fact support a showing that the communication was not intended to be private). The Court does not believe, under the circumstances presented in this case, that reading a spouse's e-mail from her attorney is any different, or should be afforded any less protection, than if the wife verbally recited the same information she learned from her attorney to her husband. There

---

[7] Wells Fargo Bank cited *United States v. Figueroa-Paz*, 468 F.2d 1055, 1057 (9th Cir. 1972), for the proposition that Mr. Westmoreland waived the martial privilege by virtue of allowing to have his deposition taken. However, according to that case, the martial privilege is waived only if neither spouse asserts the privilege. During Westmoreland's deposition, the martial privilege was asserted with respect to the Saxman e-mail account. (Dkt. 29-2 at 3.)

**MEMORANDUM DECISION AND ORDER - 12**

is no evidence here to suggest Mr. Westmoreland waived or breached the confidentiality of either the attorney-client or martial communications privilege. Accordingly, the Court will deny Wells Fargo Bank's request.[8]

### C. Company issued laptop

Wells Fargo Bank seeks return of a laptop computer it issued to Westmoreland for use in the course of her employment for review by its internal IT department. During the hearing, it became clear that neither party has accessed the laptop computer during the course of this litigation, and that both parties are interested in the obtaining certain contents of the laptop computer. Due to certain information that Westmoreland contends she saved on the computer, but may later have been removed by her supervisor or others during a leave of absence (prior to this litigation), the parties disagree as to how they will obtain and review the contents. Wells Fargo Bank contends their company IT technicians should conduct the imaging and retrieval process, while Westmoreland contends a third party technician should be hired instead.

The Court will order that an agreed upon a third-party technician will conduct the imaging and retrieval process. In consideration of Wells Fargo Bank's security concerns, a Wells Fargo Bank technician and representative of Westmoreland may be present during the process. The contents of the laptop will be provided to both parties subject to the protective order. The parties must meet and agree to the imaging and retrieval

---

[8] Westmoreland offered to provide all the emails to the Court and the Bank to resolve the Bank's inquiry or suspicion regarding the substantive nature of the same. The Court finds an *in camera* review is unnecessary. But, if Westmoreland does provide the messages to the Bank, the Court finds that such disclosure will not waive either the attorney-client or the marital communication privileges to any other communications that have to date, been withheld from disclosure.

**MEMORANDUM DECISION AND ORDER - 13**

process, as well as upon cost sharing, prior to the technician beginning the process, which must be completed within thirty (30) days of this order.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) Plaintiff's Motion for Relief from Protective Order (Dkt. 21) is **GRANTED;**

2) Defendants' Motion to Compel (Dkt. 26) is **GRANTED in part and DENIED in part**;

3) **A telephonic status conference** is set for **December 2, 2016** at 10:00 a.m. Plaintiff to initiate the call, once all parties are on the line, and connect to the Courtroom at (208) 334-9945; and

4) **The dispositive motion deadline is extended through December 16, 2016.**

Dated: **October 31, 2016**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**